Felicita RANDAZZO, Plaintiff,

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

No. 03–CV–2844 (ADS).

United States District Court,
E.D. New York.

Aug. 26, 2004.

Felicita Randazzo, East Northport, New York City, Plaintiff Pro Se.

Roslyn R. Mauskopf, United States Attorney, Eastern District of New York by Charles P. Kelly, Assistant United States Attorney, Central Islip, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Felicita Randazzo ("Randazzo" or the "plaintiff") proceeding *pro se* commenced this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), challenging the final determination of Jo Anne B. Barnhart, the Commissioner of Social Security ("Commissioner") denying her widow's insurance benefits. Presently before the Court is a motion by the Commissioner for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.P.") 12(c).

## I. BACKGROUND

### A. Procedural History

On August 7, 1991, Randazzo filed an application for widow's insurance benefits with the Department of Health and Human Services This application was denied on September 7, 1991 on the basis that the plaintiff was not married to Stephen Randazzo ("Wage Earner") for at least nine months before the date of his death as required by the Act. On November 28, 2000, the plaintiff requested that the decision denying her benefits be reopened. After her application was denied, the plaintiff requested an administrative hearing. On September 30, 2002, a hearing was held before Administrative Law Judge Emanuel Poverstein (the "ALJ"). At the hearing, the plaintiff was represented by an attorney.

In a decision dated October 16, 2002, the ALJ found that Randazzo was married to the Wage Earner for less than the nine months required by the Act to receive widow's benefits and that she failed to sustain her burden of proving that was entitled to a waiver of the nine-month requirement. Subsequently, Randazzo filed a request for review with the Appeals Council. On February 5, 2003, the Appeals Council denied the plaintiff's request for a review, making the ALJ's decision the final administrative determination. This appeal followed.

### 1. Randazzo's letter to the ALJ

Prior to the hearing, by letter dated September 12, 2002, Michael Sullivan, Esq., counsel for Randazzo, submitted a letter to the ALJ to which an unsigned statement by Randazzo was affixed. In this statement, the plaintiff explained that she and the Wage Earner were planning to be married in June 1972. Just before this date, Dr. Leonard Birch, since deceased, diagnosed Mr. Randazzo with cancer and stated that the cancer "would probably cause his death in about one year." Despite this prognosis, the plaintiff and the Wage Earner were married in July 1972. On September 20, 1972, Mr. Randazzo fell down a flight of stairs and fractured his left femur. On September 26, 1972, after six days of hospitalization, Mr. Randazzo passed away. The plaintiff stated in her letter that "because of the cancer, he was not able to overcome the injuries sustained in his fall."

### 2. Randazzo's Testimony at the Hearing

The plaintiff testified that she was born on February 6, 1929 and completed two years of college in Europe. On July 27, 1972, the plaintiff married Stephen Randazzo. On September 24, 1972, Mr. Randazzo passed away. The plaintiff currently receives $116 per month from Social Security based on her own work history. The plaintiff does not receive any Public Assistance nor does she have any other sources of monthly income.

The plaintiff was supposed to marry Mr. Randazzo at the end of June. Towards the end of June 1972, Mr. Randazzo was diagnosed with lung cancer. Prior to their wedding date, Mr. Randazzo was admitted to the hospital for tests and was diagnosed with lung cancer. Thereafter, on July 27, 1972, the plaintiff married Mr. Randazzo. At some point prior to September 18, 1972, Mr. Randazzo told the plaintiff that he could live eight months to one year. On September 18, 1972, Mr. Randazzo fell down a flight of stairs and was hospitalized for six days. Ms. Randazzo testified that on September 24, 1972, Mr. Randazzo passed away while in the hospital. Ms. Randazzo stated that the fall "aggravated this sickness."

### 3. Other Documentation in the Record

#### a. Application for Widow's or Widower's Insurance Benefits

On August 6, 1991, the plaintiff completed an "Application for Widow's Insurance Benefits." In this application, the plaintiff indicated that the Wage Earner was born on April 24, 1923 and died on September 26, 1972. Also, it stated that the Wage Earner's previous marriage ended in divorce on January 15, 1972. The plaintiff further indicated that she and Mr. Randazzo were living together at the time of his death.

#### b. Application for Survivor's Benefits.

In an application for Survivor's Benefits, the plaintiff indicated that Mr. Randazzo was a Corporal in the military from February 22, 1943 to February 12, 1946. The plaintiff also stated that the cause of death was "Carcinoma of lung—Accident."

#### c. The Certificate of Death

The Certificate of Death which was certified by Dr. William C. Porter, Jr. on September 27, 1972 states that the "IMMEDIATE CAUSE [OF DEATH] WAS CARCINOMA LUNG DUE TO OR AS A CONSEQUENCE OF FRACTURE[D] LEFT FEMUR."

#### d. Randazzo's Letter dated November 7, 2002

Although not before the ALJ, in a letter to the Appeals Council, the plaintiff stated that she married Mr. Randazzo on July 27, 1972, even though he was diagnosed with terminal lung cancer just weeks before the wedding date. He was expected to live approximately one year, but when he accidentally fell down the stairs, he incurred multiple bruises and a fractured femur.

The plaintiff stated that even though his death certificate states that the case of death was lung cancer, the death certificate also notes that the cause of death was the trauma caused by the accident. It was also stated that Mr. Randazzo served in WWII and was a wage earner his entire life.

In its review of this matter, the Court may consider the plaintiff's letter of November 7, 2002. *See Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) ("In reviewing an ALJ's decision, we consider the entire administrative record, including new evidence submitted to the Appeals Council following the ALJ's decision.") (citing *Perez v. Chater,* 77 F.3d 41, 46 (2d Cir.1996)).

### B. The ALJ's Decision

The ALJ made the following findings in his decision denying the plaintiff's request for widow's insurance benefits.

First, he found that the plaintiff's application for widow's benefits, filed August 7, 1991, has been readjudicated pursuant to a request that the initial denial of that application be reopened and revised. Second, the ALJ determined that the claimant and the wage earner were married on July 27, 1972. Third, the ALJ found that the Wage Earner died on September 26, 1972 due to lung cancer, not because he fractured his femur. In support of this conclusion, the ALJ noted that the Wage Earner's death certificate states that the "immediate cause" of death was lung carcinoma with "fracture of the left femur" listed secondarily. In addition, the ALJ indicated that when the plaintiff applied for veteran's widow benefits, she listed "carcinoma of lung—accident" as the cause of death. Fourth, the ALJ found that because the claimant died from lung cancer and not because he fractured his femur, the claimant's allegation that the claim-

ant's death was accidental is not sustainable. Finally, the ALJ concluded that the claimant did not satisfy the nine month marriage requirement to be eligible to receive widow's benefits.

### C. New Evidence Contained in the Plaintiff's Affidavit

Attached to her Affidavit in Opposition to the defendant's motion, Randazzo submitted two copies of Mr. Randazzo's hospital admission record and a one page letter dated December 24, 2003 from Charles A. Connell, a friend. These documents were not before the Commissioner. As such, the Court can consider these letters only as a basis for a remand. *Moscatiello v. Apfel,* 129 F.Supp.2d 481, 490 (E.D.N.Y. 2001); *see also* 42 U.S.C. § 405(g) (1988) ("The court ... may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is no good cause for the failure to incorporate such evidence into the record in the prior proceeding...."). The Second Circuit summarized this "three part showing" as follows: An appellant must show that the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the Secretary to decide the claimants application differently. (3) Finally, the claimant must show good cause for her failure to present the evidence earlier. *Lisa v. Secretary of Health and Human Services,* 940 F.2d 40, 43 (2d Cir.1991) (internal quotations and citations omitted).

The admission record pre-dates the ALJ's decision but the plaintiff offers no reason for not including it as evidence in the hearing before the ALJ. Thus, the Court denies the plaintiff's request to add the hospital admission record as she has failed to give "good cause" for not producing and presenting the evidence at the time of her hearing.

In his letter, Mr. Connell indicates, among other things, that he has known the claimant for forty-six years, that Randazzo was a devoted mother and caretaker of her blind mother and volunteered at her church, children's school, library and for the American Red Cross. Mr. Connell further stated that in July 1972, he learned that Mr. Randazzo "had developed an illness that reportably was treatable, and which could prolong his life." Charles Connell ltr. dated Dec. 24, 2003. In the Court's view, the opinion of a layperson, such as Mr. Connell, is neither relevant nor probative and would not have influenced the Secretary to decide the claimants application differently. Thus, this letter may not be added to the plaintiff's record.

## II. DISCUSSION

### A. The Legal Standard

■ To review the Commissioner's decision, the Court must determine (1) whether the Commissioner applied the correct legal standard, *see Tejada v. Apfel,* 167 F.3d 770, 773 (2d Cir.1999); and (2) whether the decision is supported by substantial evidence, *see* 42 U.S.C. § 405(g); *Brown v. Apfel,* 174 F.3d 59, 61–62 (2d Cir.1999). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1938), and requires enough evidence that a reasonable person "might accept as adequate to support a conclusion." *Brown,* 174 F.3d at 62–63.

In determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "to examine the entire record, including contradictory evidence and evidence from which conflicting interferences can be drawn." *Id.* at 62 (quoting *Mongeur v. Heckler,* 722 F.2d 1033, 1038 (2d Cir.1983) (per curiam)). In addition, the Court is mindful that "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Commissioner of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998). Indeed, in evaluating the evidence, " 'the court may not substitute its own judgment for that of the Secretary, even if it might justifiably have reached a different result upon *de novo* review.' " *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (quoting *Valente v. Secretary of Health & Human Services,* 733 F.2d 1037, 1041 (2d Cir.1984)).

Remand of a disability claim for further administrative procedures is an appropriate remedy where, among other things, (1) "there are gaps in the administrative record or the ALJ has applied an improper legal standard ...," *Rosa v. Callahan,* 168 F.3d 72, 82–83, or (2) new, material evidence is adduced that was not produced before the agency. *See Raitport v. Callahan,* 183 F.3d 101, 104 (2d Cir. 1999) (citation omitted).

In addition, the Court must liberally interpret the complaint of a *pro se* plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986). Nevertheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (citations omitted).

## B. As to the Denial of Widow's Benefits

Section 202(e) of the Act provides for the payment of monthly benefits to the widow of an individual who dies fully insured. A "widow" is defined in pertinent part as

> the surviving wife of an individual, but only if ... she was married to him for a period of not less than nine months immediately prior to the day on which he died

42 U.S.C. § 416(c)(5); *see also* 20 C.F.R. § 404.335(a)(2). This nine-month duration requirement for widow's benefits is a means of safeguarding against the payment of benefits where a relationship was entered into in order to secure benefit rights. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (upholding the durational requirement as constitutional because it found that any imprecision in the application of the requirement was "justified by its ease and certainty of operation.").

In the event that a widow was not married to the wage earner for at least nine months, this nine month requirement is deemed satisfied where the widow can establish that at the time of the marriage, the wage earner reasonably expected to live for nine months and that his death was accidental. 42 U.S.C. § 416(k)(a)(A) (indicating that the nine-month durational requirement will be waived in the case of "accidental death ... unless the Commissioner of Social Security determines that at the time of the marriage involved the individual could not have reasonably been expected to live for nine months."); *see also* 20 C.F.R. § 404.335(a)(2)(i). A death is "accidental"

> if he receives bodily injuries solely through violent, external, and accidental means and, as a direct result of the bodily injuries and independently of all

other causes, loses his life not later than three months after the day on which he receives such bodily injuries.

42 U.S.C. § 416(k); *see also* 20 C.F.R. § 404.335(a)(2)(i) (A "death is accidental if it was caused by an event that the insured did not expect; it was the result of bodily injuries received from violent and external causes; and as a direct result of these injuries, death occurred not later than 3 months after the day on which the bodily injuries were received."); *see also Miller v. Bowen*, 789 F.2d 678, 679 (9th Cir.1986).

 Here, it is undisputed that the plaintiff was married to the Wage Earner for less than nine-months. Thus, in order to receive widow's benefits, the plaintiff must establish (1) that at the time of their marriage, Mr. Randazzo was reasonably expected to live for nine months, and (2) that his death was accidental within the requirements of 42 U.S.C. § 416(k) as being caused by bodily injury through violent, external, and accidental means.

In a case such as this

[w]here a pre-existing disease exists, [the Commissioner] must decide which factor (the accidental injury or the pre-existing disease) was primarily responsible for causing death at the particular time that death occurred. *A preexisting disease (or illness) does not, necessarily, preclude a finding that the accidental injury was the proximate cause of death.*

Program Operations Manual System ("POMS") GN 00305.105(A)(3)(d) (emphasis added). The Commissioner must determine which, as between the accident or the preexisting disease, is "the more substantial contributing factor." *Id.*

In denying widow's benefits to the plaintiff, the Secretary did not address whether Mr. Randazzo was reasonably expected to live for nine months from the date of his marriage to the plaintiff. Rather, benefits were denied to the plaintiff solely on the basis that Mr. Randazzo's death was not accidental in that it was caused by his lung cancer and not by the fracture of his femur. In support of his conclusion, the ALJ primarily relied upon the death certificate which states in pertinent part that the "IMMEDIATE CAUSE [OF DEATH] WAS CARCINOMA LUNG DUE TO OR AS A CONSEQUENCE OF FRACTURE[D] LEFT FEMUR." The ALJ also noted that the plaintiff's application for veteran's widow benefits states that "carcinoma of lung—accident" was the cause of death.

In the Court's view, the crucial inquiry is whether the plaintiff was reasonably expected to live for nine months from the date of the marriage. If death occurs before the elapse of nine months of marriage, an accident is *not* considered to be the sole cause of death

[i]f the worker had an active progressive disease, which in and of itself, *was expected to cause death before 9 months after the date of the marriage,* and an accident aggravated it so that the death resulted at a particular time. . . .

POMS GN 00305.105(A)(3)(d) (emphasis added). On the other hand, an accident will be considered the sole cause of the fatality

[i]f the worker had an active, progressive disease, which, in and of itself, could have caused death *more than 9 months after the date of the marriage,* and an accident aggravated it so that death resulted before nine months of marriage elapsed. . . .

*Id.* (emphasis added).

 Here, there is a material factual issue as to whether Mr. Randazzo was reasonably expected to live for more than nine months from the time of the mar-

riage. The ALJ erred in failing to make this determination.

In addition, in relying solely on the death certificate and the application for veteran's widow benefits, the Commissioner failed to follow the procedure set forth in the POMS. According to the POMS, the Commissioner is to

> [t]horoughly develop all cases involving allegations of accidental death not excepted [where the death certificate shows that an accident was the sole cause of death] while recognizing the sensitive nature of the development. This includes obtaining a death certificate in all cases ... as well as hospital, doctor's ... records and any other pertinent information and statements ...
>
> Of significant probative value ... is a statement from the [wage earner's] treating physician about the [wage earner's] condition prior to the accident, including any pre-existing disease (or illness), the status of the disease and its future impact on the [wage earner's] health. If the claimant alleges that the accident resulted from surgery, request the treating physician's assessment of the risk and the [wage earner's] likelihood of recovery.

POMS GN 00305.105(B)(2).

The administrative record in this case did not contain any of Mr. Randazzo's medical records addressing the June 1972 diagnosis of cancer. Such records would be instrumental in assisting the Commissioner with her determination as to whether Mr. Randazzo was reasonably expected to live for nine months from the date of his marriage. Moreover, with respect to the Commissioner's heavy reliance on the Wage Earner's death certificate in determining the cause of death, the Court notes that although a "death certificate generally indicates the cause of death ... Entries on the death certificate are not necessarily controlling. Evidence may establish that the cause of death was misclassified or that the circumstances of the particular case justify a finding that the death was accidental." POMS GN 00305.105(A)(2).

Further, the Court notes that the death certificate states that the death by carcinoma was "due to or as a consequence of fracture[d] left femur." That statement is evidence supporting a conclusion that the decedent may have died as a result of an accident. Significantly, should the ALJ determine that Mr. Randazzo could have reasonably lived for nine months from the date of his marriage to the plaintiff, under the POMS the fact that Mr. Randazzo's death was a "consequence" of his accident mandates a finding that Ms. Randazzo is eligible for widow's benefits. *See* POMS GN 00305.105(A)(3)(d) ("If the worker had an active, progressive disease, which, in and of itself, could have caused death more than 9 months after the date of the marriage, and an accident aggravated it so that death resulted before 9 months of marriage elapsed, consider the accident to be the sole cause of the fatality.").

Finally, given the limited financial means of the plaintiff, the Court reiterates the Commissioner's duty to notify the claimant

> of the options for obtaining attorneys to represent [her] in presenting [her] case[ ] before the Commissioner of Social Security. Such notification shall also advise the claimant of the availability to qualifying claimants of legal services organizations which provide legal services free of charge.

42 U.S.C. §§ 406(c), 1383(d)(2)(B).

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Commissioner's motion for judgment on the pleadings in **DENIED**; and it is further

**ORDERED**, that the final decision of the Commissioner is vacated and this case

is **REMANDED** to the Commissioner for a new hearing during which he is to apply the Program Operations Manual System regulations and the applicable law to determine whether the Wage Earner was reasonably expected to live for nine months from the date of marriage, and, if so, whether his death was accidental; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**